# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:17 cv 39

| | |
|---|---|
| MARY K. KNOWLES, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| NANCY A. BERRYHILL, ) | |
| *Acting Commissioner of Social Security*, ) | |
| ) | |
| **Defendant.** ) | |

This matter is before the Court on Plaintiff's Motion for Judgment on the Pleadings (# 10) and Defendant's Motion for Summary Judgment (# 14). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits. The issues have been fully briefed, and the matter is ripe for ruling.

## I. Procedural Background

On July 31, 2013, Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income. (Transcript of Administrative Record ("T.") 14) Plaintiff alleged a disability onset date of May 28, 2013. (T. 14) On January 14, 2014, the Social Security Administration initially denied Plaintiff's claims. (T. 14) On August 27, 2014, the claims were denied upon reconsideration. (T. 14) On September 30, 2014, Plaintiff filed a written request for a hearing. (T. 14)

On June 16, 2016, a video hearing was held before an Administrative Law Judge ("ALJ")

in Greenville, South Carolina.[1] (T. 14) Plaintiff appeared via video in Asheville, North Carolina. (T. 14) On September 13, 2016, the ALJ issued a decision finding that Plaintiff was not disabled from May 28, 2013, through the date of his decision. (T. 14–27) Plaintiff requested review of the ALJ's decision. (T. 10) The Appeals Council denied Plaintiff's request for review. (T. 1–3) On February 2, 2017, Plaintiff filed this action seeking review of the Commissioner's final decision. *See* Compl. (#1).

## II.     Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Under the five-step evaluation, the Commissioner must consider each of the following in sequence: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the listing of impairments contained in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920; Johnson, 434 F.3d at 653 n.1.; Mastro, 270 F.3d at 177.

At the first two steps of the sequential evaluation, the burden is on the claimant to make

---

[1] Janette Clifford, a vocational expert, appeared at the hearing. (T. 14) Attorney Brain M. Ricci represented Plaintiff at the hearing. (T. 14)

2

the requisite showing. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If a claimant fails to satisfy his or her burden at either of these first two steps, the ALJ will determine that the claimant is not disabled and the process ends. Mascio v. Colvin, 780 F.3d 632, 634–35 (4th Cir. 2015).

The burden remains on the claimant at step three to demonstrate that the claimant's impairments satisfy a listed impairment and thereby establish disability. Monroe, 826 F.3d at 179. If the claimant fails to satisfy his or her burden at step three, the ALJ must still, however, determine the claimant's residual functional capacity ("RFC"). Mascio, 780 F.3d at 635. After determining the claimant's RFC, the ALJ proceeds to step four in order to determine whether the claimant can perform his or her past relevant work. Id. The burden is on the claimant to demonstrate that he or she is unable to perform past work. Monroe, 826 F.3d at 180. If the ALJ determines that a claimant is not capable of performing past work, then the ALJ proceeds to step five. Mascio, 780 F.3d at 635.

At step five, the ALJ must determine whether the claimant can perform other work. Id. The burden rests with the Commissioner at step five to prove by a preponderance of the evidence that the claimant is capable of performing other work that exists in significant numbers in the national economy, taking into account the claimant's RFC, age, education, and work experience. Id.; Monroe, 826 F.3d at 180. Typically, the Commissioner satisfies her burden at step five through the use of the testimony of a vocational expert ("VE"), who offers testimony in response to a hypothetical question from the ALJ that incorporates the claimant's limitations. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180. If the Commissioner satisfies her burden at step five, then the ALJ will find that the claimant is not disabled and deny the application for disability benefits. Id.

### III. The ALJ's Decision

In the September 13, 2016, decision, the ALJ concluded that Plaintiff was not disabled

under Sections 216(i) and 233(d) of the Social Security Act. (T. 27) In support of this conclusion, the ALJ made the following specific findings:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

(2) The claimant has not engaged in substantial gainful activity since May 28, 2013, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

(3) The claimant has the following severe impairments: spine disorders, anxiety disorder, and affective disorders (20 C.F.R. §§ 404.1520(c), 416.920(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

(5) The claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c); 416.967(c) with some limits. She can lift up to 50 pounds occasionally and 25 pounds frequently. She can stand or walk for 6 hours of an 8-hour workday and sit for 6 hours of an 8-hour work day. She can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can occasionally crouch, kneel and crawl. She can frequently stoop. She can frequently perform bilateral overhead reaching. She can tolerate frequent exposure to excessive vibration and use of moving machinery. She can tolerate occasional exposure to unprotected heights. She is limited to simple, routine, repetitive tasks performed in a work environment free of fast-paced production requirements, involving only simple, work-related decisions and few, if any, workplace changes. She is capable of learning simple vocational tasks and completing them at an adequate pace with persistence in a vocational setting. She can perform simple tasks for two-hour blocks of time with normal rest breaks during an 8-hour workday with only occasional interaction with the public and co-workers.

(6) The claimant is unable to perform past relevant work as a front end manager/cashier and office manager (20 C.F.R. §§ 404.1565, 416.965).

(7) The claimant was born on May 8, 1953 and was 60 years old, which is defined as an individual closely approaching retirement age, on the on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

(8) The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* S.S.R. 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from May 28, 2013, through the date of the ALJ's decision (20 C.F.R. 404.1520(g) and 416.920 (g)).

(T. 16–26)

## IV.  Standard of Review

Title 42, United States Code, Section 405(g) provides that a plaintiff may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review is limited in that the district court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); accord Monroe, 826 F.3d at 186. "Substantial evidence is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion."" Craig, 76 F.3d at 589 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, whether the Commissioner's decision that he or she is not disabled is supported by substantial evidence in the record, and whether the ALJ reached his decision based on the correct application

of the law. Id. (emphasis added)

V.   **Discussion**

   A.   **The ALJ's Determination that Plaintiff's Headaches Were Not Severe Impairments Was Supported by the Record**

Plaintiff argues that the ALJ erred in failing to find that Plaintiff's chronic headaches were a severe impairment at step two of his evaluation. Pl.'s Mem. Supp. 8–10. The Court disagrees.

An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities." S.S.R. 96-3p. At step two, the claimant has the burden to show that the impairment is not a slight abnormality or combination of abnormalities that causes no more than minimal functional limitations. *See* Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984). A non-severe impairment is an impairment or combination of impairments that do not significantly limit a person's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a).

At step two, the ALJ found that Plaintiff had severe impairments of "spinal disorders, anxiety disorder, and affective disorders." (T. 16) The ALJ stated that these severe impairments cause significant limitations in Plaintiff's ability to perform basic work activities. (T. 16) Regarding Plaintiff's chronic headaches, the ALJ found that nothing in Plaintiff's medical records supported that Plaintiff's chronic headaches posed a significant functional limitation. (T. 16–17) The ALJ cited Exhibit 12F that shows Plaintiff was treated for neck pain and headaches and that the headaches were determined to be cervicogenic. (*See* T. 576–99) While Plaintiff received trigger point injections for pain, no functional limitations were noted. (T. 16–17) After each session a medical provider stated that Plaintiff had no restrictions or could resume normal activity without restrictions the day after the injections. (T. 581–82, 588, 591, 594, 596–97) Thus, the ALJ found Plaintiff's headaches to be non-severe. (T. 17)

Plaintiff argues that the ALJ's determination is contradicted by the record, regarding specifically Plaintiff's hospitalization and treatments by Dr. Harry Holt and Deb Phillips, LCSW. At Plaintiff's hospitalization, Dr. Holt noted that Plaintiff stated she suffered from a history of headaches and prescribed medication. (T. 402) Dr. Holt did not list any functional limitations. At a later visit, Dr. Holt diagnosed Plaintiff with post-concussion syndrome, cervical degenerative disc disease, myofascial pain syndrome, occipital neuroglia, PTSD, and chronic pain syndrome. (T. 695) Dr. Holt then filled out a general patient pain checked-box survey. (Ex. 18 F, T. 696–97) This is not definitive contrary evidence, as Plaintiff characterizes it, that Plaintiff's headaches severely interfered with basic work functions. Cummins v. Colvin, No. 2:14-CV-165, 2015 WL 1526188, at *3 (E.D. Va. Apr. 2, 2015) ("A series of boxes to check is in fact a very convenient way to summarize a detailed medical diagnosis; however such a bare conclusion cannot receive full credit without proper explanation.") (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993)); see 20 C.F.R. §§ 404.1529(a), 416.929(a). A review of Exhibit 18F record does not indicate any narrative regarding Plaintiff's headaches or pain connected to headaches.

Finally, Plaintiff cites one of Deb Phillips' letters that specifically mentions Plaintiff's headaches and that Plaintiff is "unable to get relief." (T. 492) The ALJ, however, found that Phillips is not an acceptable medical source. 20 C.F.R. §§ 404.1513(a), 416.913(a). Accordingly, her opinion regarding diagnosis of Plaintiff's headaches was not given much weight. Thus, the ALJ did not err in finding Plaintiff's headaches to be non-severe. The ALJ used the correct law and substantial evidence supports his findings.

Because the ALJ found other severe impairments at step two, the ALJ continued his evaluation and considered all relevant evidence, including evidence related to Plaintiff's headaches. In determining Plaintiff's RFC, the ALJ considered Plaintiff's testimony regarding her

headaches. (T. 19) Further, the ALJ thoroughly discussed Plaintiff's medical records relating to her neck pain and headaches and opinion evidence relating to her limitations (T. 20–25) Thus, the ALJ's RFC was tailored to Plaintiff's individual functional limitations for which there was support in the record. (T. 20–25) Thus, any alleged error that the ALJ did not classify Plaintiff's chronic headaches as severe would be harmless. *See* Courtney v. Astrue, No. 2:11cv028, 2012 WL 1944869, at *2 (W.D.N.C. May 30, 2012).

In sum, the ALJ applied the correct law and supported his findings with substantial evidence. Consequently, the Court finds that the Commissioner is entitled to summary judgment on this issue.

B.     **The ALJ Properly Evaluated the Opinion Evidence.**

Plaintiff argues that the ALJ erred by failing to accord appropriate weight to the opinion evidence on the record. Pl. Mem. Supp. 10–13. The Court disagrees.

Plaintiff's claim centers around two issues: 1) the ALJ's determination not to assign controlling weight to Dr. Holt and Deb Phillips, LCSW; and 2) the ALJ's determination to assign little weight to Dr. Holt, Julie Andrews, FNP-C, and Deb Phillips, LCSW.

The Regulations provide as follows with respect to the Social Security Administration's criteria for evaluating opinion evidence:

> Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions.

20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The Regulations direct that the ALJ must analyze and weigh the evidence of record with the following factors taken into consideration: (1) length of treatment relationship and frequency of evaluation, (2) nature and extent of the treatment

relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6); *see* Cohen v. Berryhill, 272 Fed. Supp. 3d 779, 781 (D.S.C. 2017). As a general rule, more weight is given to a medical professional who examines a claimant, as opposed to a non-examining source. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1); *see* Patterson v. Colvin, No. 5:12-CV-063-RLV-DCK, 2013 WL 3035792, at *4 (W.D.N.C. June 17, 2013). A medical opinion from a treating source will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R §§ 404.1527(c)(2), 416.927(c)(2). For a medical opinion not given controlling weight, the ALJ must weigh the opinion with the factors listed in 20 C.F.R. 404.1527(c)(2)–(6), 416.927(c)(2)–(6).

Regarding not affording Dr. Holt's opinion as controlling, the ALJ noted various records created by Dr. Holt in his analysis. (Exs. 1F, 2F, 11F, 20F, 26F; *see* T. 18–25) In his weight determination, the ALJ stated:

> I give little weight to the opinions of Dr. Harry Holt, as his opinions are inconsistent with the claimant's activities of daily living (Ex. 17F, 21F). Further, Dr. Holt's opinion that the claimant is unable to work is an issue reserved to the Commissioner.

(T. 25) First, the ALJ fully evaluated Dr. Holt's records and determined that Holt's opinions were inconsistent with other substantial evidence. (T. 18–25) Second, while not the model of clarity, reading the ALJ's analysis as a whole shows that the ALJ considered the factors in 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6) in his decision to afford Dr. Holt's opinions little weight. (T. 18–25) Thus, while Dr. Holt had a treating relationship with Plaintiff, it was one factor the ALJ took into consideration in his determination. Further, the ALJ's determination is supported by his analysis and the record.

Regarding Deb Phillips, LCSW, the ALJ fully evaluated Deb Phillips' records and determined that Phillips' opinions were inconsistent with other substantial evidence. (T. 25) Reading the ALJ's analysis as a whole shows that the ALJ considered the factors in 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6) in his decision to afford Deb Phillips' opinions little weight. (T. 18–25) Further, the ALJ found Deb Phillips to not be an acceptable medical source. (T. 25) Thus, while Deb Phillips had a treating relationship with Plaintiff, it was one factor the ALJ took into consideration in his determination. As was the case with Dr. Holt, the ALJ's determination is supported by his analysis and the record.

Regarding Deb Phillips, LCSW and Julie Andrews, being given little weight the ALJ stated:

> I have fully considered the opinions and statements in the treating source statements completed by Ms. Deb Phillips, LCSW and Ms. Julie Andrews (Ex. 5F, 9F, 18F, 23F). However, Ms. Andrews' and Ms. Phillips' statements and opinions are inconsistent with the medical record as a whole, which show the claimant has extensive activities of daily living. Further, I find that Ms. Phillips and Ms. Andrews are not "acceptable medical sources" pursuant to 20 CFR §404.1513(a) and §416.913(a); and the decision concerning disability is reserved to the Commissioner.

(T. 25) Reading the ALJ's analysis as a whole, it is clear that the ALJ took Plaintiff's treating relationship with Phillips and Andrews as one factor in his determination to afford Phillips' opinions and Andrews' opinions little weight. (T. 22–25) *See* Craig, 76 F.3d at 590; 20 C.F.R. § 404.1527(c)(4). Specifically, the ALJ mentioned the inconsistency between Phillips and Andrews' opinions and the medical record showing Plaintiff's extensive activities of daily living. (T. 25) Thus, the Court finds that the ALJ's determination to give little weight to Phillips' opinions and Andrews' opinions was supported by his analysis and the record.

The ALJ's rationales for affording little weight to the opinions offered by Dr. Holt, Deb Phillips, and Julie Andrews are legally sufficient. Further, the ALJ's evaluation of the medical

opinion evidence complies with the Regulations. Accordingly, the Court finds that the Commissioner is entitled to summary judgment on this issue.

### C. The ALJ properly determined Plaintiff's RFC

Plaintiff's final claim breaks into four arguments: (1) the ALJ incorrectly found that Plaintiff could work at a medium exertional level, even though Plaintiff can only occasionally crouch; (2) the ALJ erroneously discredited Plaintiff's testimony and ignored corroborating objective medical evidence which, taken as true, would render Plaintiff unable to perform substantial gainful employment at any exertional level; (3) because the RFC was incorrectly formed, the ALJ's application of the Medical-Vocational Guidelines was also erroneous; and (4) the ALJ erroneously equated Plaintiff's ADL ability to engage in some activities on Plaintiff's own schedule with an ability to work full-time. Pl. Mem. Supp. 13–17 The Court takes each argument in turn.

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Social Security Ruling ("SSR") 96-8p provides that the ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Monroe, 826 F.3d at 189 (quoting SSR 96-8p). In formulating a RFC, the ALJ is not required to discuss each and every piece of evidence. *See* Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865–66 (4th Cir. 2014). The ALJ is, however, required to build a logical bridge from the relevant medical and other evidence of record to his conclusion. Monroe, 826 F.3d at 189; 20 C.F.R. § 404.1545; *see also* Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). With respect to the function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his other work-related abilities on a

function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1.

"[T]he ALJ is exclusively responsible for determining an individual's RFC." Wilder v. Berryhill, No. 5:17-CV-9-GCM, 2018 WL 1004854, at *3 (W.D.N.C. Feb. 21, 2018) (citing 20 C.F.R §§ 404.1546(c), 416.946(c)). "However, it is the claimant's burden to establish her RFC by demonstrating how those impairments impact her functioning." Greer v. Colvin, No. 1:16-CV-397-DSC, 2017 WL 3090275, at *2 (W.D.N.C. July 20, 2017) (citing 20 C.F.R. §§ 404.1512(c), 416.912(c)). In considering a claimant's allegations of pain, an ALJ "need not accept[] [the allegations] to the extent they are inconsistent with the available evidence." Craig, 76 F.3d at 595.

Frequent Crouching. Regarding occasional versus frequent crouching, SSR 85-15 does not create a per se rule that precludes anyone who cannot frequently crouch from working medium work. 1985 WL 56857, at *7. Rather, "an inability to do so [frequent crouching] would substantially affect the more strenuous portion of the occupational base." Id. The record indicates that the ALJ was aware of Plaintiff's limitation regarding crouching when determining what type of medium work Plaintiff could do. (T. 25–26) Specifically, the ALJ found, based on testimony of a VE (T. 57–60), that that Plaintiff could perform the medium exertion level jobs of Laundry Worker and Counter Supply Worker, both of which do not require crouching. *See* Dictionary of Occupational Titles ("DOT") 361.685-018, 1991 WL 672987; DOT 319.687-010, 1991 WL 672772. Thus, the Court finds no error in the ALJ's determination of Plaintiff's RFC regarding crouching.

Plaintiff's Testimony. Plaintiff's second argument, that the ALJ failed to consider Plaintiff's ADLs in light of Plaintiff's testimony, also fails.

> [The ALJ] will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and [the ALJ] will evaluate your statements <u>in relation to the objective medical evidence and other evidence</u>, in reaching a conclusion as to whether you are disabled. [The ALJ] will consider whether there

are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted <u>as consistent with the objective medical evidence and other evidence</u>.

20 C.F.R. § 404.1529(c)(4) (emphasis added); 20 C.F.R. § 416.929(c)(4).

> The ALJ will assess your residual functional capacity based on <u>all of the relevant medical and other evidence</u> . . . [The ALJ] will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. (See § 404.1513.) [The ALJ] will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.

20 C.F.R. § 404.1545(a)(3) (emphasis added); 20 C.F.R. § 416.945(a)(3). Thus, while an ALJ is required to consider a claimant's testimony, an ALJ was not bound by it.

Plaintiff characterizes the ALJ's discrediting of Plaintiff's testimony as solely based on one erroneous inconsistency the ALJ identified in his report. The ALJ did err by finding a contradiction in the record and Plaintiff's testimony of why she left a job where the owner had retired ("First Job"). The record shows that Plaintiff had an angry confrontation with a boss, and the ALJ attributed that to the first job. The angry confrontation, however, was with Plaintiff's most recent job at a grocery store ("Second Job"). While the ALJ erred in stating that there was a contradiction regarding Plaintiff's first job, there remains an inconsistency between Plaintiff's testimony of why she left her second job and the record. Plaintiff testified that she left because of her health, however, the record shows she had an angry confrontation with her boss. (T. 44, 451) Plaintiff attempts at this time to inject a rationale that Plaintiff suffered from psychiatric impairments, and that it was the ALJ's error for not asking what Plaintiff meant by stating that she left due to her "health." Pl. Mem. Supp. 15

13

The Court finds that the ALJ properly considered Plaintiff's testimony. The ALJ's report discusses at length about issues testified to by Plaintiff with regard to the entire record—including numerous inconsistencies between Plaintiff's alleged symptoms and the record. (T. 18–25) Further, while the ALJ mislabeled an inconsistency regarding Plaintiff's first job, there remains the inconsistency of Plaintiff's reason for leaving her second job. Finally, while it is the ALJ's duty to develop the record, the ALJ did not commit error by not inquiring what Plaintiff meant by the term "health." Accordingly, the ALJ did not err in his credibility determination of Plaintiff and his determination of Plaintiff's ADLs.

Application of the Medical-Vocational Guidelines. The thrust of Plaintiff's argument asks the Court to make its own determination by reweighing evidence that Plaintiff should have been limited to light exertion work. This argument falls outside the scope of what this Court can review. Accordingly, the Court must decline to discuss this argument.

Plaintiff's ADLs and an Eight-Hour Work Day. Plaintiff argues that the ALJ erred by not understanding and explaining the distinction between full-time work and a person whose ADLs allow for him or her to have flexibility in scheduling, obtain help from others, and is not held to any minimum standard of performance. *See* Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012). Plaintiff's main qualm is the ALJ's determination that because Plaintiff could perform her ADLs, she could perform an eight-hour work day, five days a week, or an equivalent work schedule. Pl. Mem. Supp. 16

From reviewing the record, it is clear that the ALJ considered Plaintiff's alleged activities from her testimony and the written record. (T. 18–25) The ALJ then considered Plaintiff's alleged activities along with the other evidence in the record. The ALJ determined that Plaintiff's subjective complaints were not fully supported. (T. 18–25) The ALJ correctly considered

Plaintiff's ADLs as one factor among the evidence in determining the extent of Plaintiff's alleged limitations. *See* Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Accordingly, the Court finds no error because the ALJ's determination was supported by substantial evidence.

The ALJ correctly assessed Plaintiff's RFC. Accordingly, the Court finds that the Commissioner is entitled to summary judgment on this issue.

### D. The ALJ Failed to Consider Plaintiff's N.C. Department of Health and Human Services Disability Rating

Neither side raised the issue of the ALJ's failure to consider Plaintiff's N.C. Department of Health and Human Services ("DHHS") disability rating. (T. 319–24) Title 42 U.S.C. § 405(g) does not limit this Court to issues raised by the parties in its review of the ALJ's decision.

In his opinion, the ALJ fails to mention DHHS's disability determination and thus has failed to apply the correct law. Social Security Ruling ("SSR") 06-3p[2] is applicable to the evaluation of Plaintiff's DHHS disability rating. SSR 06-3p, in pertinent part, states:

> [W]e are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies. 20 C.F.R. §§ 404.1512(b)(5), 416.912(b)(5)). Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.
>
> * * *
>
> Because the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, we are not bound by disability decisions by other governmental and nongovernmental agencies. . . However, the [ALJ] should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases.

---

[2] SSR 06-03p was rescinded for claims filed on or after March 27, 2017. Robinson v. Berryhill, No. 1:16-CV-03628-DCN, 2018 WL 746540, at *3 n.2 (D. S.C. Feb. 7, 2018). Plaintiff filed her claim prior to March 27, 2017; thus, SSR 06-03p applies to this case.

2006 WL 2329939, at *6-7.

In <u>Bird v. Comm'r of Soc. Sec. Admin.</u>, 699 F.3d 337 (4th Cir. 2012), the Fourth Circuit noted that "under the principles governing SSA disability determinations, another agency's disability determination cannot be ignored and must be considered." <u>Id.</u> at 343 (citation and internal quotations omitted). The Fourth Circuit ultimately held that "a VA disability determination must be accorded <u>substantial weight</u> in Social Security disability proceedings." <u>Id.</u> at 345 (emphasis added). Additionally, the Fourth Circuit held that "an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate." <u>Id.</u> at 343.

Because the ALJ failed to even consider Plaintiff's DHHS disability determination, the ALJ failed to comply with *Bird* by not giving the DHHS disability rating "substantial weight" or clearly explaining how "less weight" was appropriate. For this reason, the ALJ's decision must be remanded for further proceedings. *See* <u>Bird</u>, 699 F.3d at 341 n.1 ("Because we conclude that the ALJ committed legal error by failing to consider properly all the record evidence, an assessment of the weight of the evidence must be left to the ALJ on remand in the first instance").

## VI. Conclusion

For the reasons stated, the Court **DENIES** Plaintiff's Motion for Judgment on the Pleadings (# 10). Further, the Court **DENIES** the Commissioner's Motion for Summary Judgment (# 14). The Court **REMANDS** this case for further proceedings consistent with this Order.

Signed: March 17, 2018

Dennis L. Howell
United States Magistrate Judge

16